## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**DAISHA EWINGS et al.,**

       **Plaintiffs,**

**v.**                    **CIVIL NO.: 1:24-cv-10732 (KMW/SAK)**

**UNITED STATES POSTAL SERVICE,**

       **Defendant.**

_____/

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER CONDITIONALLY CERTIFYING COLLECTIVE ACTION AND TO FACILITATE NOTICE TO POTENTIAL COLLECTIVE MEMBERS

# <u>TABLE OF CONTENTS</u>

INDEX OF EXHIBITS…………………………………………………………………………..ii

TABLE OF AUTHORITIES ............................................................................................. iii

I.    INTRODUCTION AND FACTUAL SUMMARY ..................................................................1

II.   LEGAL AUTHORITY ................................................................................................6

   A.  THE FLSA AUTHORIZES COLLECTIVE ACTIONS. ..................................................6

   B.  USPS SUFFERS AND PERMITS CCAS AND PTFS NATIONWIDE TO WORK THROUGH THEIR
       THIRTY MINUTE MEAL BREAKS WHICH IT NONETHELESS DEDUCTS FROM THEIR
       TIME/PAY. ...................................................................................................7

III.  APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS ................................................10

   A.  THE COURT MAY AUTHORIZE NOTICE TO CCAS AND PTFS. ...................................10

   B.  THE THIRD CIRCUIT ENDORSES A TWO-STEP CERTIFICATION PROCESS. ..................11

   C.  THE EVIDENCE PROVIDED WITH THIS MOTION EXCEEDS THAT PRESENTED IN OTHER
       CASES GRANTING CONDITIONAL CERTIFICATION. ...........................................16

IV.   FACTORS IRRELEVANT TO THE COURT'S CONSIDERATION ..........................................19

V.    PLAINTIFFS' NOTICE IS ACCURATE AND SHOULD BE EMAILED, TEXTED AND POSTED AT ALL

      OF USPS's POST OFFICES, IN ADDITION TO FIRST-CLASS MAILING ...................................21

VI.   A SIXTY-DAY NOTICE PERIOD IS APPROPRIATE ......................................................24

VII.  A REMINDER NOTICE HALF-WAY THROUGH THE NOTICE PERIOD IS APPROPRIATE ..................25

VIII. NOTICE SHOULD BE GIVEN WITHIN A THREE-YEAR STATUTE OF LIMITATIONS ......................26

IX.   LIMITED DISCOVERY OF NAMES, ADDRESSES, EMAIL ADDRESSES AND PHONE NUMBERS OF
      THE PUTATIVE COLLECTIVE IS NECESSARY TO CARRY OUT NOTICE ...............................27

X.    CONCLUSION .......................................................................................................28

CERTIFICATE OF SERVICE ..............................................................................................30

# <u>INDEX OF EXHIBITS</u>

**EXHIBIT A** ......................................................................................................................2, 3, 4
**EXHIBIT B** ......................................................................................................................2, 3, 4
**EXHIBIT C** ......................................................................................................................2, 3, 4
**EXHIBIT D** ......................................................................................................................2, 3, 4
**EXHIBIT E** ......................................................................................................................2, 3, 4
**EXHIBIT F** ......................................................................................................................2, 3, 4
**EXHIBIT G** ......................................................................................................................2, 3, 4
**EXHIBIT H** ......................................................................................................................2, 3, 4
**EXHIBIT I** .........................................................................................................................2, 4
**EXHIBIT J** .........................................................................................................................2, 4
**EXHIBIT K** ........................................................................................................................2, 4
**EXHIBIT L** .........................................................................................................................2, 4
**EXHIBIT M** ........................................................................................................................2, 4
**EXHIBIT N** ......................................................................................................................2, 4, 5
**EXHIBIT O** ......................................................................................................................2, 4, 5
**EXHIBIT P** ......................................................................................................................3, 4, 5
**EXHIBIT Q** ......................................................................................................................3, 4, 5
**EXHIBIT R** ......................................................................................................................3, 4, 5
**EXHIBIT S** ......................................................................................................................3, 4, 5
**EXHIBIT T** ....................................................................................................................9, 22, 37
**EXHIBIT U** .......................................................................................................................22, 37

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Anglada v. Linens 'N Things, Inc.,* No. 06Civ.12901, 2007 WL 1552511 (S.D.N.Y. May 29, 2007) .......................28

*Aquillino v. The Home Depot,* Civ. No. 04-4100, 2006 WL 2583563 (D.N.J. Sept. 7, 2006)...............................14,15

*Asirifi v. W. Hudson Sub-Acute Care Ctr., LLC,* Civ. A. No. 11-04039, 2014 WL 294886 (D.N.J. Jan. 24, 2014) ...13

*Barajas v. Acosta,* Civ. A. No. H-11-3862, 2012 WL 1952261 (S.D. Tex. May 30, 2012) .......................................23

*Bellan v. Cap. BlueCross*, 496 F. Supp. 3d 854 (M.D. Pa. 2020)...................................................................................20

*Belt v. P.F. Chang's China Bistro, Inc.*, Civ. A. No. 18-3831, 2020 WL 3829026 (E.D. Pa. July 8, 2020) ...............24

*Bishop v. AT & T Corp.,* 256 F.R.D. 503 (W.D. Pa. 2009) ...........................................................................................15

*Bland v. Calfrac Well Servs. Corp.,* 2013 WL 4054594 (W.D. Pa. Aug. 12, 2013)....................................................24

*Clark v. Williamson*, No. 1:16cv1413, 2018 WL 1626305 (M.D.N.C. Mar. 30, 2018)...............................................25

*Covachuela v. Jersey Firestop, LLC*, Civ. No. 20-8806, 2021 WL 1326985 (D.N.J. Apr. 9, 2021) ..........................24

*Disimone v. Atlas Service, Inc.*, No. 09-80604-CIV, 2009 WL 5166262 (S.D. Fla. Dec. 29, 2009) ..........................28

*Dunkel v. Warrior Energy Servs., Inc.,* 304 F.R.D. 193 (W.D. Pa. 2014) ....................................................................15

*Dyson v. Stuart Petroleum Testers, Inc*., 308 F.R.D. 510 (W.D. Tex. 2015) ................................................................24

*Elliott v. Amspec Servs., LLC*, Civ. A. No. 10-CV-6575, 2011 WL 6002019 (D.N.J. Nov. 29, 2011) ......................21

*Fortin v. Wise Med. Staffing, Inc.*, No. 2:21-cv-1467, 2022 WL 1467668 (S.D. Ohio May 10, 2022) .....................18

*Gilbertson v. J. Givoo Consultants I, Inc.*, Civ. A. No. 20-6991, 2021 WL 689114 (D.N.J. Feb. 23, 2021) ........22, 26

*Hagans v. Nat'l Mentor Healthcare, Inc.*, No. CV 22-00128-KMW-SAK, 2023 WL 2554159 (D.N.J. Mar. 17, 2023) ..................................................................................................................................... 12, 15, 20, 24, 25

*Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215 (3d Cir. 2016) .................................................................7

*Henry v. Quicken Loans, Inc.,* Civ. No. 04-40346, 2006 WL 2811291 (E.D. Mich. Sept. 28, 2006) ........................28

*Herring v. Hewitt Assocs., Inc.,* Civ. A. No. 06-267, 2007 WL 2121693 (D.N.J. July 27, 2007) ..............................13

*Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989)..................................................................... 10, 14, 21, 22, 28

*Holmes v. Pension Plan of Bethlehem Steel Corp.,* 213 F.3d 124 (3d Cir. 2000)........................................................21

*Johnson v. Lazer Spot, Inc.,* Civ. No. 1:22-cv-1852, 2024 WL 227799 (N.D. Ga. Jan. 19, 2024).............................24

*Kaynaroglu v. Avis Budget Grp., Inc.,* No. 2:24-CV-06828 (BRM) (AME), --- F.Supp.3d ---, 2025 WL 926412, (D.N.J. Mar. 27, 2025)...................................................................................................................12, 20, 22

*Kraft v. Freight Handlers, Inc.*, 2019 WL 3854989 (M.D. Fla. May 21, 2019) ...........................................................24

*Krueger v. N.Y. Tel. Co.,* Civ. Nos. 93–178, 93–179, 1993 WL 276058 (S.D.N.Y. July 21, 1993)............................19

*Landry v. Swire Oilfield Servs., L.L.C.,* 252 F. Supp. 3d 1079 (D.N.M. 2017) ............................................24

*Maddy v. Gen. Elec. Co.*, 59 F. Supp. 3d 675 (D.N.J. 2014) ......................................................................17

*Marcy v. Select Med. Corp.*, Civ. A. No. 1:23-CV-469, 2023 WL 9074622 (M.D. Pa. Nov. 1, 2023) ..................17

*Masson v. Ecolab, Inc.,* Civ. No. 04-4488, 2005 WL 2000133 (E.D.N.Y. Aug. 18, 2005)..............................15

*McGhee v. TOMS KING, LLC,* Mo. 2:19-cv-01470, 2021 WL 1176097 (W.D. Pa. Mar. 29, 2021) ..........................25

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)..........................................................................26

*Morden v. T-Mobile USA, Inc.,* No. C05-2112, 2006 WL 1727987 (W.D. Wash. June 22, 2006)............................27

*Morisky v. Pub. Serv. Elec. & Gas Co.,* 111 F.Supp.2d 493 (D.N.J. 2000)............................................7, 15

*Mraz v. Aetna Life Ins. Co.*, 2014 WL 5018862 (M.D. Pa. Oct. 7, 2014) ....................................................24

*Neal v. Air Drilling Assocs.*, No. 3:14-CV-1104, 2015 WL 225432 (M.D. Pa. 2015) ..................................21

*Owens v. Bethlehem Mines Corp.,* 108 F.R.D. 207 (S.D. W. Va. 1985) ......................................................19

*Resendiz-Ramirez v. P & H Forestry, LLC,* 515 F. Supp. 2d 937 (W.D. Ark. 2007) ........................................27

*Robles v. Vornado Realty Tr.,* 2015 WL 5012597 (D.N.J. Aug. 21, 2015); ................................................25

*Rodney v. Casella Waste Sys., Inc.*, No. 2:21-cv-00196, 2023 WL 313929 (D. Vt. Jan. 19, 2023) ............................17

*Salone v. Cushman & Wakefield U.S., Inc.*, No. 4:21 CV 1151, 2022 WL 123789 (E.D. Mo. Jan. 13, 2022)............18

*Sanchez v. Santander Bank, N.A.*, Civ. No. 17-5775, 2019 WL 6050738 (D.N.J. Nov. 15, 2019) ......................22, 25

*Shakib v. Back Bay Rest. Grp., Inc.,* No. 10–CV–4564, 2011 WL 5082106 (D.N.J. Oct. 26, 2011) ........................21

*Sperling v. Hoffman-La Roche,* 118 F.R.D. 392 (D.N.J. 1988), *affd., Hoffman La-Roche v. Sperling,* 493 U.S. 165
(1989) ..........................................................................................................................14

*Symczyk v. Genesis HealthCare Corp.,* 656 F.3d 189 (3d. Cir. 2011)....................................................12, 20

*Thomas v. Maximus, Inc*, Civ. No. 3:21cv498, 2022 WL 1482010 (E.D. Va. May 10, 2022) ....................................18

*Valerio v. RNC Indus., LLC*, 314 F.R.D. 61 (E.D.N.Y. 2016)....................................................................25

*Vargas v. General Nutrition Centers, Inc.*, No. 2:10-cv-867, 2012 WL 3544733 (W.D. Pa. Aug. 16, 2012)............19

*Villatoro v. Kim Son Restaurant, L.P.,* 286 F.Supp.2d 807 (S.D. Tex. 2003) ..............................................26

*Yang v. Taiji Oriental Spa NJ Corp.*, No. 22cvl617, 2023 WL 8469611 (D.N.J. Dec. 6, 2023) ..........................22, 23

*Ying Yang v. Village Super Market, Inc.*, No. 18-cv-10486, 2019 WL 1275059 (D.N.J. Mar. 20, 2019) ..................23

*Young v. Cooper Cameron Corp.,* 229 F.R.D. 50 (S.D.N.Y. 2005) ..............................................................19

*Zanes v. Flagship Resort Development, LLC*, Civ. A No. 09-3736, 2010 WL 4687814 (D.N.J. Nov.9, 2010) ..........13

*Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012) ....................................................................12

**Statutes**

29 U.S.C. § 216(b).................................................................................................................1, 6, 10, 11, 15, 19

**Rules**

Rule 23 of the Federal Rules of Civil Procedure ....................................................................................10

**Regulations**

29 C.F.R. § 778.315..................................................................................................................................6

Plaintiffs file this Memorandum in Support of Plaintiffs' Motion for an Order Conditionally Certifying Collective Action and to facilitate Notice to Potential Collective Members and as grounds therefor state:

## I.    <u>INTRODUCTION AND FACTUAL SUMMARY</u>

1.    Section 16(b) of the Fair Labor Standards Act of 1938 ("FLSA") provides, among other things, that an action to recover unpaid overtime compensation may be maintained against any employer in any federal or state court of competent jurisdiction by any one or more employees for themselves and on behalf of other employees similarly situated. *See* 29 U.S.C. § 216(b).

2.    As stated in Plaintiffs' Amended Complaint, Plaintiffs are current and former hourly-paid USPS City Carrier Assistants ("CCAs") and Part-Time Flexible workers ("PTFs") employed by the United States Postal Service ("USPS") to carry mail and perform related duties during the applicable limitations period, and who was paid for at least thirty-seven point five (37.5) hours in one or more workweeks during that period.

3.    Specifically, CCAs and PTFs were employed with the common job duties of casing and correlating mail prior to delivery, delivering mail and packages to customers, and collecting mail and packages from customers' homes and businesses. *See* Declaration of Plaintiff, Brian Bauska  ("Bauska Decl."), attached hereto as **EXHIBIT A**, at ¶¶3-4; Declaration of Cameron Paige ("Paige

Decl."), attached hereto as **EXHIBIT B**, at ¶¶3-4; Declaration of Elizabeth Thomas ("Thomas Decl."), attached hereto as **EXHIBIT C**, at ¶¶3-4; Declaration of Alicia Roca ("Roca Decl."), attached hereto as **EXHIBIT D**, at ¶¶3-4; Declaration of Christopher Mazzola ("Mazzola Decl."), attached hereto as **EXHIBIT E**, at ¶¶3-4; Declaration of Javalentino Lee ("Lee Decl."), attached hereto as **EXHIBIT F**, at ¶¶3-4; Declaration of Yuri Alvarado ("Alvarado Decl."), attached hereto as **EXHIBIT G**, at ¶¶3-4; Declaration of Luis Cajahuaringa ("Cajahuaringa Decl."), attached hereto as **EXHIBIT H**, at ¶¶3-4; Declaration of Lacasmas Terrell ("Terrell Decl."), attached hereto as **EXHIBIT I**, at ¶¶3-4; Declaration of Ashley Phillips ("Phillips Decl."), attached hereto as **EXHIBIT J**, at ¶¶3-4; Declaration of Maggie Matullo ("Matullo Decl."), attached hereto as **EXHIBIT K**, at ¶¶3-4; Declaration of Faith Cureton ("Cureton Decl."), attached hereto as **EXHIBIT L**, at ¶¶3-4; Declaration of Larry Horton ("Horton Decl."), attached hereto as **EXHIBIT M**, at ¶¶3-4; Declaration of Jennifer Harris ("Harris Decl."), attached hereto as **EXHIBIT N**, at ¶¶3-4; Declaration of Davis Martel ("Martel Decl."), attached hereto as **EXHIBIT O**, at ¶¶3-4; Declaration of Matthew Milakovich ("Milakovich Decl."), attached hereto as **EXHIBIT P**, at ¶¶3-4; Declaration of Cornelius Green ("Green Decl."), attached hereto as **EXHIBIT Q,** at ¶¶3-4; Declaration of Alejandro Nava ("Nava Decl."), attached

hereto as **EXHIBIT R,** at ¶¶3-4; Declaration of Takishia Coleman ("Coleman Decl."), attached hereto as **EXHIBIT S,** at ¶¶3-4.

4.    These CCAs and PTFs regularly performed work during "meal periods" for which they should have been paid overtime premiums, but for which they instead were not paid at all, due to USPS's common policy and practice of automatically deducting meal periods even where it actually or constructively knew that no meal period was or could be taken. *See* Amended Complaint and Demand for Jury Trial, D.E. 36.

5.    Specifically, even though CCAs and PTFs could not take their meal breaks due to their workload, USPS's default coding in its Time and Attendance Control System ("TACS"), deducted a thirty-minute meal period from their credited work time each day. *See* Bauska Decl., **EXH. A**, at ¶¶5-9; Paige Decl., **EXH. B**, at ¶¶5-9; Thomas Decl., **EXH. C**, at ¶¶5-9; Roca Decl., **EXH. D**, at ¶¶5-9; Mazzola Decl., **EXH. E**, at ¶¶5-9; Lee Decl., **EXH. F**, at ¶¶5-9; Alvarado Decl., **EXH. G**, at ¶¶5-9; Cajahuaringa Decl., **EXH. H**, at ¶¶5-9; Terrell Decl., **EXH. I**, at ¶¶5-9; Phillips Decl., **EXH. J**, at ¶¶5-9; Matullo Decl., **EXH. K**, at ¶¶5-9; Cureton Decl., **EXH. L**, at ¶¶5-9; Horton Decl., **EXH. M**, at ¶¶5-9; Harris Decl., **EXH. N**, at ¶¶5-9; Martel Decl., **EXH. O**, at ¶¶5-9; Milakovich Decl., **EXH. P**, at ¶¶5-9; Green Decl., **EXH. Q,** at ¶¶5-9; Nava Decl., **EXH. R,** at ¶¶5-9; Coleman Decl., **EXH. S,** at ¶¶5-9.

6.     These systemic deductions from time/pay were not limited to the Plaintiffs and declarants, but rather applied to *all* CCAs and PTFs, who worked through their meal periods with their supervisor's knowledge, as it was common knowledge that CCAs and PTFs typically worked through meal periods in order to complete their work, and were thereby denied overtime compensation. *See* Bauska Decl., **EXH. A**, at ¶¶10-11; Paige Decl., **EXH. B**, at ¶¶10-11; Thomas Decl., **EXH. C**, at ¶¶10-11; Roca Decl., **EXH. D**, at ¶¶10-11; Mazzola Decl., **EXH. E**, at ¶¶10-11; Lee Decl., **EXH. F**, at ¶¶10-11; Alvarado Decl., **EXH. G**, at ¶¶10-11; Cajahuaringa Decl., **EXH. H**, at ¶¶10-11; Terrell Decl., **EXH. I**, at ¶¶10-11; Phillips Decl., **EXH. J**, at ¶¶10-11; Matullo Decl., **EXH. K**, at ¶¶10-11; Cureton Decl., **EXH. L**, at ¶¶10-11; Horton Decl., **EXH. M**, at ¶¶10-11; Harris Decl., **EXH. N**, at ¶¶10-11; Martel Decl., **EXH. O**, at ¶¶10-11; Milakovich Decl., **EXH. P**, at ¶¶10-11; Green Decl., **EXH. Q,** at ¶¶10-11; Nava Decl., **EXH. R,** at ¶¶10-11; Coleman Decl., **EXH. S,** at ¶¶10-11.

7.     As a result of this common policy and practice, USPS failed to pay all CCAs and PTFs in the putative collective overtime pay and overtime premiums for all hours in excess of forty (40) hours in a workweek.

8.     Plaintiffs' claims are typical of the claims of other former and current similarly situated hourly-paid CCAs and PTFs USPS employed, and whom it continues to employ, as all had meal periods deducted even when they could not

take a meal, and where such hours improperly deducted were overtime hours. *See generally* **Exhs. A-S.**

9.    As stated above, the putative collective consists of all current and former hourly-paid USPS CCAs and PTFs who worked for USPS at any time within the three (3) years preceding this Motion, and who were credited with having worked at least thirty-seven point five (37.5) hours or more in any workweek during that time period.

10.    Due to the common automatic meal period deduction policy, CCAs and PTFs nationwide did not receive full and proper payment of overtime compensation for all hours worked over 40 in one or more workweeks for USPS.

11.    The named Plaintiffs, as well as non-party declarants who worked in USPS offices throughout the country,[1] have filed Opt-in Consents and/or Declarations in support of this Motion.

12.    Moreover, Plaintiffs anticipate filing many additional consent forms for other "similarly situated" employees who likewise wish to join this lawsuit, as they learn of it.

13.    Simply put, all other CCAs and PTFs are owed proper payment of their regular[2] and overtime wages and the right to participate in this litigation.

---

[1] Plaintiffs' Motion is supported by Declarations of nineteen (19) CCAs and PTFs who worked for USPS in at least thirteen (13) states (California, Florida, Georgia,

Defendant has acted or refused to act on common grounds applicable to all these CCAs and PTFs, thereby making the identical relief appropriate with respect to their current and former CCAs and PTFs as a whole. And, although the collective of CCAs and PTFs is identified and certain, the individual members of the collective cannot be completely identified and notified of their right to join this action absent access to Defendant's records.

WHEREFORE, Plaintiffs, Daisha Ewings, Brian Bauska, Camron Paige, and Elizabeth Thomas, respectfully request that the Court permit and supervise notice to all current and former hourly-paid USPS CCAs and PTFs who worked for USPS at any time within the three (3) years preceding this Motion.

## II.   LEGAL AUTHORITY

### A. THE FLSA AUTHORIZES COLLECTIVE ACTIONS.

The FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated. 29 U.S.C. § 216(b). The FLSA provides, in part:

---

Illinois, Maryland, New Jersey, New York, North Carolina, Oregon, Pennsylvania, Tennessee, Washington, and Wisconsin) and Washington D.C.; *See* Exhibits A-S.
[2] Pursuant to the relevant regulations "[Overtime] compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the non-overtime hours under his contract (express or implied) or under any applicable statute has been paid." 29 C.F.R. § 778.315. Thus, Plaintiffs seek unpaid straight time in weeks in which they are owed unpaid overtime compensation to the extent Defendant credited them with less than 40 hours of work and thus failed to pay them for all hours up to 40, in addition to their overtime hours worked.

> An action to recover the liability [for unpaid overtime] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other similarly situated. ***No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.***

*See id.* (emphasis added).

As further set forth below, the initial step in the collective action process is conditional certification and notice to potential collective members upon the lenient standard of showing that the collective members are similarly situated. *See Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016); *see also Morisky v. Pub. Serv. Elec. & Gas Co.,* 111 F.Supp.2d 493, 497 (D.N.J. 2000).

### B. USPS SUFFERS AND PERMITS CCAS AND PTFS NATIONWIDE TO WORK THROUGH THEIR THIRTY MINUTE MEAL BREAKS WHICH IT NONETHELESS DEDUCTS FROM THEIR TIME/PAY.

USPS is responsible for providing postal service in the United States and its territories. Its entire workforce is uniformly subject to Defendant's time and pay practices complained of here. All CCAs and PTFs had similar job responsibilities of casing, sorting, delivering, and picking up mail. *See supra* at Section I, ¶3. USPS uniformly coded each CCA and PTF in its TACS system, and likewise uniformly/automatically deducted thirty (30) minutes of time for a lunch break for each CCA and PTF each day, despite the fact that CCAs and PTFs typically did

not get/take such breaks, reducing each CCA's and PTF's credited work hours by thirty (30) minutes for each day worked. *Id.* at ¶¶ 4-5. These policies and practices resulted in USPS's failure to pay overtime for Plaintiffs, declarants and for all other CCAs and PTFs, with the knowledge of their USPS supervisors. *Id.* at ¶¶6-7. Plaintiffs and those similarly situated employees, are such hourly-paid CCAs and PTFs who were paid for thirty-seven point five (37.5) or more hours in a workweek and were denied proper and lawful overtime compensation in violation of the FLSA as a result of USPS's common practices complained of. *See generally* **Exhs. A-S**.

Based upon Defendant's unlawful policies, as alleged herein, Plaintiffs seek this Court's authorization to facilitate notice to the following collective:

> **All hourly-paid CCAs and PTFs who worked for Defendant within the last three years and who were credited/paid for at least at least thirty-seven point five (37.5) hours in one or more workweeks.**

Plaintiffs further request that they be permitted to give such notice, as approved by this Court, to all such CCAs and PTFs to notify them of their rights to opt-in to this litigation by executing an appropriate consent as required by Section 216(b) of the FLSA.  A copy of Plaintiffs' proposed Notice and Consent to Join forms are attached hereto as **EXHIBIT T** and **U** respectively.  In order to send this

Notice and Consent to Join, Plaintiffs require information from Defendant's books and records relating to contact information for CCAs and PTFs.

USPS applies its unlawful compensation policies toward the defined collective of CCAs and PTFs nationwide. USPS cannot dispute this. Therefore, nationwide certification is warranted here. Based upon the record evidence presented to date, Plaintiffs have demonstrated that all of the CCAs and PTFs throughout their system are "similarly situated" because: (a) they all had similar job titles; (b) they were all hourly-paid; (c) they were all subject to automatic meal break deductions notwithstanding the fact they did not take a meal; (d) they performed nearly identical job duties on a day-to-day basis for Defendant, regardless of where they performed their work; (e) they all worked over forty (40) hours in one or more workweeks for Defendant; and (f) they were not paid proper overtime compensation for all hours worked over forty (40) in one or more workweeks, due to USPS's common practice and policy of automatically deducting meal breaks even when none is taken. *See supra* Section I at ¶¶4-7.

As a result of these compensation practices, Defendant failed to pay CCAs and PTFs in accordance with the FLSA, and such compensation practices have adversely affected the rights of each member and potential member of this collective action. Therefore, Plaintiffs seek this Court's authorization to facilitate notice to each CCA and PTF in the above-defined collective – nationwide.

## III.    APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS

### A. THE COURT MAY AUTHORIZE NOTICE TO CCAS AND PTFS.

FLSA Rule 216(b) collective actions operate much differently than typical class action suits under Rule 23 of the Federal Rules of Civil Procedure. Under 29 U.S.C. § 216(b) of the FLSA, an employee belonging to a similarly situated group of plaintiffs must "opt-in" by filing a written consent with the Court in order to be bound by the outcome of the case. Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. *See id.*  This is the exact opposite of the traditional Rule 23 class action framework, in which a plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out."

In *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989), the Court ruled that not only did trial courts have authority to compel defendant-employers to provide names and addresses of potential plaintiffs through the pretrial discovery process, but that this authority also included sending court-authorized consent forms to potential plaintiffs in an FLSA collective action.  *See id.*  There, the Court addressed the issue of whether the district court may play any role on prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the group on whose behalf the collective action has been brought.  *See id.*  The Court determined that district courts have discretion in

appropriate cases to implement 29 U.S.C. §216(b), by facilitating notice to potential plaintiffs. *See id*. at 486. This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. *See id.*

Trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute. Thus, it lies within the discretion of the trial court to begin its involvement early, at the point of the initial notice, rather than at some later time. *Id.* Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action. *Id*. at 487. Additionally, the benefits of the collective action provisions of 29 U.S.C. §216(b), "depend on employees receiving accurate and timely notice concerning the pendency of the collective action so they can make informed decisions about whether to participate." *Id*. at 486.

### B. THE THIRD CIRCUIT ENDORSES A TWO-STEP CERTIFICATION PROCESS.

Like district and circuit courts around the country, including this Court, the Third Circuit has long-recognized that a collective action has two stages, namely the conditional certification and notice stage and the final certification stage. *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d at 224 ("…courts have developed a practical approach to managing FLSA collective actions. This approach, which

has been recognized by the Supreme Court and is widely accepted in most jurisdictions, is a two-step certification process"); *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012) (noting that "this two-tier approach, while 'nowhere mandated, ... appears to have garnered wide acceptance.'... We implicitly embraced this two-step approach, and we affirm its use here.") (citing *Symczyk v. Genesis HealthCare Corp.,* 656 F.3d 189, 192 fn 5 (3d. Cir. 2011)); *Kaynaroglu v. Avis Budget Grp., Inc.*, No. 2:24-CV-06828 (BRM) (AME), --- F.Supp.3d ---, 2025 WL 926412, at *11 (D.N.J. Mar. 27, 2025) (using two-step certification process, noting that "[n]umerous Third Circuit decisions following *Symczyk* plainly endorse the two-step certification approach" and rejecting invitation to abandon two-step process, agreeing that "every district court in the Third Circuit to consider [a one-step approach] has soundly rejected it."); *Hagans v. Nat'l Mentor Healthcare, Inc.*, No. CV 22-00128-KMW-SAK, 2023 WL 2554159, at *2 (D.N.J. Mar. 17, 2023) (WILLIAMS, J.) ("The Third Circuit follows a two-step process for deciding whether an action may proceed as a collective action under the FLSA.").

Pursuant to this two-step approach, the first stage is the notice stage (also referred to as Stage 1).  At this stage, the court uses a modest or lenient standard to determine whether notice should be given to potential collective members, and the court's determination typically results in conditional certification of a

representative collective.[3] *Asirifi v. W. Hudson Sub-Acute Care Ctr., LLC*, Civ. A. No. 11-04039, 2014 WL 294886, at *2 (D.N.J. Jan. 24, 2014) ("At this stage, the court usually only has evidence before it in the form of pleadings and affidavits, so it uses a fairly lenient standard to determine whether potential collective action members are similarly situated and the court's determination 'typically results in conditional certification of a representative class.'"), citing *Herring v. Hewitt Assocs., Inc.,* Civ. A. No. 06-267, 2007 WL 2121693 at *5 (D.N.J. July 27, 2007); *Halle*, 842 F.3d at 224 ("The first step, so-called conditional certification, requires a named plaintiff to make a "modest factual showing"—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members.").

If a plaintiff satisfies the lenient "similarly situated" standard at this stage, then the Court grants conditional certification of the collective action for the purpose of sending notice to the potentially affected employees and conducting discovery concerning the opt-in plaintiffs. *Id.* ("The 'sole consequence' of conditional certification is the dissemination of court-approved notice to

---

[3] This case is at Stage One, because no discovery has been completed and the case has not yet been certified ready for trial. *Zanes v. Flagship Resort Development, LLC*, Civ. A No. 09-3736, 2010 WL 4687814, at *3 (D.N.J. Nov.9, 2010)("because the case is not yet ready for trial and discovery has just begun, the Court will consider Plaintiffs' Motion for Conditional Certification under the stage

potential collective action members."). Only at the second stage does the Court make a decision on final certification based upon a "specific factual analysis of each employee's claim to ensure that each claimant is an appropriate party." *Herring*, 2007 WL 2121693, at *3.

To meet their lenient Stage 1 burden, and demonstrate that Plaintiffs and the other CCAs and PTFs are similarly situated, Plaintiffs need not show that their positions are identical to the positions of other putative collective members. *Sperling v. Hoffman-La Roche,* 118 F.R.D. 392, 405 (D.N.J. 1988), *affd., Hoffman La-Roche v. Sperling,* 493 U.S. 165 (1989); *Outlaw v. Secure Health L.P.*, No. 3:11CV602, 2012 WL 3150582, at *6 (M.D. Pa. Aug. 2, 2012) ("[P]recedent shows that a plaintiff need not prove an absolute uniformity of facts with every putative class member to satisfy the lenient standard for conditional certification.") (citing cases). Rather, Plaintiffs need only show "a factual nexus between [their] situation and the situation of other current and former [employees] sufficient to show that they are similarly situated." *Aquillino v. The Home Depot,* Civ. No. 04-4100, 2006 WL 2583563, at *2 (D.N.J. Sept. 7, 2006). As this Court has noted, "Plaintiffs must show three things: (1) an employer policy, (2) that affected the Plaintiffs in a particular way, and (3) that also affected other employees in a similar

---

one burden of proof.").

way." *Hagans*, 2023 WL 2554159, at *3 (quoting *Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 200 (W.D. Pa. 2014)).

The requirement to establish a factual nexus supporting a finding that the collective members are similarly situated is not meant to impose a heavy burden on the plaintiff moving for conditional certification at Stage 1. The determination at this stage is based solely on the minimal evidence before the Court, such as pleadings and declarations/affidavits, and, as stated above, the lenient standard typically results in conditional certification of a representative collective to whom notice is sent and who receive an opportunity to "opt in." *Morisky,* 111 F.Supp.2d at 497; *see also Aquillino,* 2006 WL 2583563, at *1-2. The merits of the claims "need not be evaluated nor discovery be completed in order for such a notice to be approved and disseminated." *Aquillino,* 2006 WL 2583563, at *2 (quoting *Masson v. Ecolab, Inc.,* Civ. No. 04-4488, 2005 WL 2000133, at *12-14 (E.D.N.Y. Aug. 18, 2005)); *see also Bishop v. AT & T Corp.,* 256 F.R.D. 503, 507 (W.D. Pa. 2009) (in determining whether the plaintiffs have made a "modest factual showing," "the merits of the plaintiffs' claims are not addressed."). Moreover, even under the plain language of the FLSA itself, Plaintiffs need only demonstrate that the defined collective is comprised of CCAs and PTFs who are similarly situated to Plaintiffs with regard to Defendant's payroll practices and record keeping requirements. *See* 29 U.S.C. § 216(b).

In the instant case, based on the evidence submitted in support of this Motion, there is an obvious factual nexus between Plaintiffs and the CCAs and PTFs sufficient to show that they were the victims of a common policy or plan, leading to a common harm. Indeed, Plaintiffs' claims are typical of the claims of the other individuals who are/were CCAs and PTFs. *See supra* Section I at ¶¶3-7.

Based upon the Consents previously filed and the Declarations filed in support of the instant Motion, Plaintiffs easily exceed their burden to facilitate notice. Here, all of Defendant's hourly-paid CCAs and PTFs performed the same job duties, and worked overtime hours for which they were not paid, due to the uniform automatic meal deductions to which they were subject, despite regularly not having time to take a bona fide meal break. *See id.* Notwithstanding the regular and overtime hours worked by Plaintiffs and other similarly situated CCAs and PTFs, Defendant failed to pay Plaintiffs, and these similarly situated CCAs and PTFs, overtime compensation for their hours worked over forty in one or more workweeks. *See id.* As a result of these practices, Defendant regularly failed to pay all of their CCAs and PTFs proper overtime compensation owed, and Plaintiffs' motion should be granted.

## C. **THE EVIDENCE PROVIDED WITH THIS MOTION EXCEEDS THAT PRESENTED IN OTHER CASES GRANTING CONDITIONAL CERTIFICATION.**

The issue presented here is hardly one of first impression. Courts within the Third Circuit and around the country routinely grant nationwide conditional certification, with even less evidence than the nineteen declarations from thirteen states presented here, in cases alleging wrongful denial of overtime resulting from automatic deduction of meal breaks irrespective of whether employees were able to take such breaks. *See, e.g.*, *Maddy v. Gen. Elec. Co*., 59 F. Supp. 3d 675 (D.N.J. 2014) (declarations from 12 service technicians across 9 states, alleging off-the-clock overtime work, including through automatically deducted meal breaks, sufficient to grant nationwide conditional certification for collective of approximately 1,200 employees); *Marcy v. Select Med. Corp*., Civ. A. No. 1:23-CV-469, 2023 WL 9074622 (M.D. Pa. Nov. 1, 2023) (granting nationwide conditional certification of a collective comprised of direct care employees based on 15 declarations from 8 states, all of which alleged regular application of a 30-minute meal break deduction to their daily hours across all locations, even when employees did not take breaks); *Rodney v. Casella Waste Sys., Inc.*, No. 2:21-cv-00196, 2023 WL 313929 (D. Vt. Jan. 19, 2023) (collective of over 1,000 waste disposal drivers across 50 locations certified, based on 13 declarations covering 10 locations alleging failure to compensate for all hours worked due to automatic meal break deductions where employees regularly worked through or were unable to take due to time pressures involved in

completing their routes); *Fortin v. Wise Med. Staffing, Inc.*, No. 2:21-cv-1467, 2022 WL 1467668 (S.D. Ohio May 10, 2022) (Declarations from 4 employees in a single state sufficient for conditional certification of hourly paid healthcare staffing employees at multiple locations across 9 states); *Thomas v. Maximus, Inc*, Civ. No. 3:21cv498, 2022 WL 1482010 (E.D. Va. May 10, 2022) (Declarations from 12 customer service representatives across 10 states sufficient for nationwide conditional certification of multinational call center employees allegedly denied compensation for automatically deducted meal breaks which they did not receive); *Salone v. Cushman & Wakefield U.S., Inc.*, No. 4:21 CV 1151, 2022 WL 123789 (E.D. Mo. Jan. 13, 2022) (nationwide collective of maintenance employees certified, based on 7 declarations from 4 states alleging companywide policy or practice of applying meal break deductions even when meal breaks were not taken or were interrupted by work duties). Plaintiffs' evidence here exceeds that relied upon in the foregoing cases and thus, nationwide conditional certification is appropriate.

Accordingly, Plaintiffs seek Court authorization to provide: (1) the proposed Notice (*see* **EXHIBIT T**), to be sent to all similarly situated employees; and (2) the proposed Consent to Join form (*see* **EXHIBIT U**), which similarly situated employees can complete, sign, and file with the Court.

## IV.    FACTORS IRRELEVANT TO THE COURT'S CONSIDERATION

Plaintiffs anticipate Defendant may contend that notice should not proceed because Plaintiffs have not ***proven*** a violation of the FLSA, or because the damages of the collective members may vary from one CCA to another.  However, neither of these contentions is an appropriate basis to deny conditional certification.

Rather, the thrust of the Court's inquiry at this juncture—i.e., at the conditional certification stage—"is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(B) with respect to their allegations that the law has been violated."  *Vargas v. General Nutrition Centers, Inc.*, No. 2:10-cv-867, 2012 WL 3544733, at *4 (W.D. Pa. Aug. 16, 2012), citing *Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y. 2005); *see also Krueger v. N.Y. Tel. Co.,* Civ. Nos. 93–178, 93–179, 1993 WL 276058, *2 (S.D.N.Y. July 21, 1993) ("[T]he Court need not evaluate the merits of plaintiff's claims in order to determine whether a 'similarly situated' group exists."); *see also Owens v. Bethlehem Mines Corp.,* 108 F.R.D. 207, 210–211 (S.D. W. Va. 1985) ("[A]t this point the Plaintiffs do not have to prove that there was a class of employees which was subjected to discrimination by [the defendant]. This ... is the ultimate question.  The plaintiff only has to show that a group of employees similarly situated to one another are

claiming discrimination."). Although these cases are not controlling, they are entirely consistent with the Third Circuit's admonition that, "[d]uring the initial phase, the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." *Symczyk,* 656 F.3d at 192.

The analysis here is not directed to whether the Plaintiffs will succeed in their claim; rather, the purpose of the analysis is to "establish [ ] nothing more than the right of the plaintiffs to 'maintain' a collective action." *Sperling v. Hoffman–La Roche, Inc.,* 118 F.R.D. at 407. As such, under the "modest factual showing" standard, Plaintiffs must produce only some evidence "of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.* at 19. It is well-settled that "[t]he merits of a plaintiff's underlying FLSA claim are not assessed at the conditional certification stage." *Kaynaroglu*, 2025 WL 926412, at *10 (further citation omitted); *See Hagans*, 2023 WL 2554159, at *4 ("a full evaluation of the merits is not appropriate at this stage, and it is sufficient that Plaintiffs share similar job duties and share a similar business relationship with Defendants."); *Bellan v. Cap. BlueCross*, 496 F. Supp. 3d 854, 858-859 (M.D. Pa. 2020) ("At the step-one inquiry, the court does not weigh the evidence, resolve factual disputes, or reach the merits of plaintiff's claims.") (citing *Neal v. Air Drilling Assocs.*, No. 3:14-CV-

1104, 2015 WL 225432, at *3 (M.D. Pa. 2015)) (declining to consider "merits-based defenses" at conditional certification, because "it is clearly established that credibility determinations and merits-based arguments are more properly considered at the stage of final certification."); *Shakib v. Back Bay Rest. Grp., Inc.,* No. 10–CV–4564, 2011 WL 5082106, at *2 (D.N.J. Oct. 26, 2011) ("The merits of the plaintiff's claim need not be evaluated and discovery need not be completed in order for such notice to be granted and disseminated.").

Similarly, "the necessity for calculation of damages on an individual basis should not preclude class determination *when the common issues which determine liability predominate." Elliott v. Amspec Servs., LLC,* Civ. A. No. 10-CV-6575, 2011 WL 6002019, at *4 (D.N.J. Nov. 29, 2011) (citing *Holmes v. Pension Plan of Bethlehem Steel Corp.,* 213 F.3d 124, 137 (3d Cir. 2000) (emphasis in original). Thus, notwithstanding Defendant's anticipated arguments to the contrary, the Court should conditionally certify the case and permit court-supervised notice to issue.

## V. PLAINTIFFS' NOTICE IS ACCURATE AND SHOULD BE EMAILED, TEXTED AND POSTED AT ALL OF USPS's POST OFFICES, IN ADDITION TO FIRST-CLASS MAILING

Plaintiffs' proposed judicial notice is "timely, accurate, and informative." *See Hoffmann-La Roche*, 493 U.S. at 172. As such, the proposed notice achieves

the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action.

Plaintiffs request that the proposed notice be adopted and sent nationwide via mail, email, and text message. Electronic means of disseminating notice does not present a greater risk to the integrity of the notice process than does notice by USPS, given the parties involved in this action and the potential for any physical document to be converted to an electronic medium to be disseminated. *See Sanchez v. Santander Bank, N.A.*, Civ. No. 17-5775, 2019 WL 6050738, at *3 (D.N.J. Nov. 15, 2019). Notice to potential collective members by email and text message, in addition to physical mail, is frequently permitted and embraced by this Court "'because of the heightened reliability of electronic notifications to reach the intended individual.'" *Kaynaroglu v.*, 2025 WL 926412, at *17 (quoting *Gilbertson v. J. Givoo Consultants I, Inc.*, Civ. A. No. 20-6991, 2021 WL 689114, at *1 (D.N.J. Feb. 23, 2021) (permitting notice via email and text message and collecting cases from Third Circuit permitting same)); *Yang v. Taiji Oriental Spa NJ Corp.*, No. 22cvl617, 2023 WL 8469611, at *4 (D.N.J. Dec. 6, 2023) (permitting notice by email and text, in addition to physical mail and posting notices in defendant's workplaces). Plaintiffs' proposed judicial notice is "timely, accurate, and informative." *See Hoffmann-La Roche*, 493 U.S. at 172. Moreover, the heightened reliability of electronic means of disseminating notice, in addition

to physical mail, furthers the FLSA's ultimate goal of ensuring employees receive accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate. *Id.* at 171.

Plaintiffs also request that in addition to permitting Plaintiffs to notify the potential collective members by mail, email, and text, this notice be posted at each of USPS's Post Office facilities to further the broad remedial purpose of the FLSA. *See Barajas v. Acosta*, Civ. A. No. H-11-3862, 2012 WL 1952261, at *4 (S.D. Tex. May 30, 2012) (rejecting defendant's asserted first amendment concerns and requiring defendant to post the notice in a location visible to all employees). Posting the notice and consent to join forms in conspicuous locations at USPS's Post Office facilities is both a reasonable and cost-efficient method of ensuring collective members receive timely notice. *See Yang*, 2023 WL 8469611, at *3-4 (citing *Ying Yang v. Village Super Market, Inc.*, No. 18-cv-10486, 2019 WL 1275059, at *4 (D.N.J. Mar. 20, 2019) (combination of physical mailing and postings at applicable workplace locations were found reasonable and cost-efficient methods of disseminating notice)).

Further, Plaintiffs request that potential collective members be given the option to sign their consent to join forms electronically via "Docusign." Federal Courts throughout the United States "recogniz[e] that 'we live in a time when all manner of commercial transactions are routinely cemented by electronic

submission'" and "courts have approved the use of online, electronic signature opt-in forms." *Landry v. Swire Oilfield Servs., L.L.C.,* 252 F. Supp. 3d 1079, 1130 (D.N.M. 2017) (quoting *Mraz v. Aetna Life Ins. Co*., No. 3:12-cv-805, 2014 WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014); *see also Bland v. Calfrac Well Servs. Corp.,* No. 2:12-cv-014097, 2013 WL 4054594, at *1 (W.D. Pa. Aug. 12, 2013).[4]

Giving the putative collective members this option is in line with the FLSA's remedial purposes and would ensure that the members of the putative collective have the ability to submit their consent forms without additional obstacles standing in their way.

## VI.    A SIXTY-DAY NOTICE PERIOD IS APPROPRIATE

Courts routinely hold that a sixty (60) day notice period is appropriate in FLSA cases. *See, e.g., Hagans*, 2023 WL 2554159, at *6 (60-day notice period sufficient, while not needlessly delaying resolution of the litigation); *Covachuela v. Jersey Firestop, LLC*, Civ. No. 20-8806, 2021 WL 1326985, at *4 (D.N.J. Apr. 9, 2021) (same); *Belt v. P.F. Chang's China Bistro, Inc.*, Civ. A. No. 18-3831, 2020 WL 3829026, at *9 (E.D. Pa. July 8, 2020) (60-day opt-in period is reasonable);

---

[4] *See also Johnson v. Lazer Spot, Inc.*, Civ. No. 1:22-cv-1852, 2024 WL 227799, at *9 (N.D. Ga. Jan. 19, 2024) (allowing collective members to electronically execute consent forms); *Kraft v. Freight Handlers, Inc.*, 2019 WL 3854989, at *6 (M.D. Fla. May 21, 2019) (class members allowed to execute consents electronically given potential size of class and permitted use of email to provide notice); *Dyson v. Stuart Petroleum Testers, Inc*., 308 F.R.D. 510, 518 (W.D. Tex. 2015) (allowing

*Sanchez,* 2019 WL 6050738, at *4 (setting 60-day notice period); *Clark v. Williamson*, No. 1:16cv1413, 2018 WL 1626305, at *8 (M.D.N.C. Mar. 30, 2018) (60-day notice period appropriate); *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016) ("A 60-day notice period for potential plaintiffs is common practice under the FLSA.") (citations omitted).

In line with the above authority, Plaintiffs respectfully request that the Court give putative collective members sixty (60) days to return their consent to join forms and opt into the case.

## VII.  A REMINDER NOTICE HALF-WAY THROUGH THE NOTICE PERIOD IS APPROPRIATE

Similar to the email and text message transmission of the Notice, a reminder notice is appropriate as well. Courts in the Third Circuit have repeatedly permitted such a reminder notice, because it ensures that putative collective members are aware of their rights and the time within which to exercise same. *See Hagans,* 2023 WL 2554159, at *6 (Allowing reminder notice midway through notice period); *McGhee v. TOMS KING, LLC,* Mo. 2:19-cv-01470, 2021 WL 1176097, at *10 (W.D. Pa. Mar. 29, 2021) (finding reminder postcard at half-way point in notice period reasonable and not redundant); *Covachuela,* 2021 WL 1326985, at *4 (permitting reminder notice half way through the class period via mail, email and

---

plaintiff to employ its proposed electronic signature method for execution of consent forms).

text message); *Gilbertson,* 2021 WL 689114, at *2 (permitting reminder notice and noting that reminder notices are regularly permitted in the Third Circuit); *Belt,* 2020 WL 3829026, at *9 (same).

In light of the FLSA's remedial purposes, and the many cases explicitly approving a reminder notice, Plaintiffs respectfully request to send the putative collective members a reminder notice via email, text message, and U.S. Mail, at the half-way point in the notice period to ensure that they are aware of their rights and the applicable deadlines within which to exercise them.

## VIII.  <u>NOTICE SHOULD BE GIVEN WITHIN A THREE-YEAR STATUTE OF LIMITATIONS</u>

Notice within a three-year statute of limitations period is appropriate in this case.  The FLSA allows Plaintiffs to collect damages within a three-year statute of limitations if they can show that Defendant's violation of the FLSA was "willful" – meaning the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  Whether Defendant's violations of the FLSA were willful is an issue going to the merits of the case and not whether notice should be issued to potential claimants. *See Villatoro v. Kim Son Restaurant, L.P.,* 286 F.Supp.2d 807, 811 (S.D. Tex. 2003). The facts concerning willfulness must be elicited during discovery, and Defendant may challenge the three-year statute of limitations again at an appropriate time.  Thus, notice should go to all individuals

who were employed by Defendant during the three-year period preceding the Court's ruling on the instant Motion. *See Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937 (W.D. Ark. 2007).

Here, a three-year notice period is appropriate, based on Plaintiffs' allegations in the Amended Complaint alone. Despite the clear and long-standing law on the issue of payment of overtime premiums to those suffered or permitted to work more than forty hours in a workweek, Defendant never complied with the FLSA. Therefore, at the preliminary notice stage, Plaintiffs show a reasonable basis for a willful violation of the FLSA by Defendant such that mere notice should issue to current and former employees within a three-year statute of limitations.

## IX. LIMITED DISCOVERY OF NAMES, ADDRESSES, EMAIL ADDRESSES AND PHONE NUMBERS OF THE PUTATIVE COLLECTIVE IS NECESSARY TO CARRY OUT NOTICE

The opt-in provision of the FLSA requires some procedure for identifying and notifying potential collective members. *Morden v. T-Mobile USA, Inc.,* No. C05-2112, 2006 WL 1727987, at *3 (W.D. Wash. June 22, 2006) (compelling the defendant to produce the names and addresses of potentially similarly situated employees despite the fact that no conditional certification motion was pending before the court). "The first step is to identify those employees who may be similarly situated and who may therefore ultimately seek to opt in to the action."

*Id.* As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice. *See, e.g., Hoffmann-La Roche,* 493 U.S. at 165; *see also Anglada v. Linens 'N Things, Inc.,* No. 06Civ.12901, 2007 WL 1552511, at *7 (S.D.N.Y. May 29, 2007); *see also Henry v. Quicken Loans, Inc.,* Civ. No. 04-40346, 2006 WL 2811291, at *7 (E.D. Mich. Sept. 28, 2006).[5] Thus, if this Court grants Plaintiffs' Motion, the Court should also order USPS to provide Plaintiffs a list of putative collective members' names, addresses and email addresses to carry out notice.

## X.    **CONCLUSION**

A primary reason for conditionally certifying an FLSA collective action is to ensure the joining of the other parties occurs in an "orderly, sensible, ….efficient and proper way." *Hoffman-La Roche,* 493 U.S. at 170-71. Here, Plaintiffs have demonstrated through copious and competent evidence that the "orderly, sensible…. efficient and proper way" to address the similar claims of the similarly situated CCAs and PTFs is through an FLSA collective action.

---

[5] The names and addresses of potential collective members are discoverable during the regular course of discovery even absent judicial notice, because current and former CCAs and PTFs are critical fact witnesses to this lawsuit. *Hoffmann-La Roche* acknowledged the existence of "alternative bases for the discovery, for instance that the employees might have knowledge of other discoverable matter." 493 U.S. at 160; *see, e.g., Disimone v. Atlas Service, Inc.*, No. 09-80604-CIV, 2009 WL 5166262 (S.D. Fla. Dec. 29, 2009)(ordering defendant to produce a list of plaintiffs' co-workers prior to conditional certification).

WHEREFORE, Plaintiffs respectfully requests that this Court grant Plaintiffs' request for Court authorization for: (1) Defendant to produce to Plaintiffs a list of all similarly situated  CCAs and PTFs within the period beginning three years prior to November 25, 2024, and continuing through the present, (2) the proposed Notice letter, attached as **EXHIBIT T**, to be sent to all similarly situated current and former CCAs and PTFs nationwide (within the applicable limitations period) by mail, email, and text, in addition to posting the proposed Notice letter in conspicuous locations visible to all employees at each of USPS's Post Office facilities; and (3) the proposed Consent to Join form, attached as **EXHIBIT U**, also to be sent to all similarly situated current and former CCAs and PTFs nationwide (within the applicable limitations period) by mail, email, and text, which similarly situated employees can complete and file with the Court.

Dated:      June 27, 2025                    Respectfully submitted,

*/s/Andrew Frisch*
Andrew Frisch, Esq.
New Jersey Bar No.: 038452000
Angeli Murthy, Esq.(*Pro Hac Vice*)
MORGAN & MORGAN, P.A.
8151 Peters Road, Ste 4000
Plantation, FL 33324
Tel: (954) WORKERS
Fax: 954-327-3016
E-mail: AFrisch@forthepeople.com
E-mail: AMurthy@forthepeople.com

*Trial Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of June, 2025, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ *Andrew Frisch*
Andrew Frisch, Esq.