TODD BLANCHE
U.S. Deputy Attorney General
JORDAN FOX
Chief of Staff &
 Associate Deputy Attorney General
Special Attorney
ALEX SILAGI
Assistant United States Attorney
Deputy Chief, Civil Division
United States Attorney's Office
970 Broad Street, Suite 700
Newark, NJ 07102

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAISHA EWINGS, *et al.*, | HON. KAREN M. WILLIAMS |
| *Plaintiffs*, | Civ. No. 24-10732 |
| v. | |
| UNITED STATES POSTAL SERVICE, | |
| *Defendant*. | |

**U.S. POSTAL SERVICE'S REPLY IN FURTHER
SUPPORT OF DISMISSAL AND SUR-REPLY
TO MOTION FOR CONDITIONAL CERTIFICATION**

On the brief:
Alex Silagi
Assistant United States Attorney
Deputy Chief, Civil Division

# **TABLE OF CONTENTS**

ARGUMENT ........................................................................................................... 1

    I.    Plaintiff's Claim is Implausible ................................................................. 1

        A.    Postal Service' Written Policy Complies with the FLSA. ....................... 1

        B.    Plaintiffs' Do Not Allege an FLSA Violation in a Given Week .............. 4

    II.   Conditional Certification is Improper ............................................................ 6

CONCLUSION ....................................................................................................... 13

TABLE OF AUTHORITIES

**Federal Cases** — Page(s)

*Ajanel v. JC HVAC LLC*
  No. 24-2150 (MEF), 2025 WL 1671318 (D.N.J. June 12, 2025) ............................... 4

*Anderson v. Wells Fargo Fin., Inc.*
  2012 WL 12871958 (S.D. Iowa, Feb. 6, 2012) ........................................................ 7

*Angstadt v. Midd–West Sch. Dist.*
  377 F.3d 338 (3d Cir. 2004) .................................................................................... 3

*Armstrong v. Weichert Realtors*
  No. 05-3120 (JAG), 2006 WL 1455781 (D.N.J. May 19, 2006) ............................ 6, 7

*Asirifi v. W. Hudson Sub-Acute Care Ctr., LLC*
  No. 11-04039, 2014 WL 294886 (D.N.J. Jan. 24, 2014) ........................................... 8

*Babcock v. Butler County*
  806 F.3d 153 (3d Cir. 2015) .................................................................................... 5

*Buchspies v. Pfizer, Inc.*
  No. 18-16083, 2019 WL 5078853 (D.N.J. Oct. 10, 2019) ......................................... 5

*Camesi v. Univ. of Pittsburgh Med. Ctr.*
  No. 09-85J, 2011 WL 6372873 (W.D. Pa. Dec. 20, 2011) ............................... 7, 9, 10

*Chandler v. Heartland Emp. Servs., LLC*
  2014 WL 1681989 (E.D. Pa., Apr. 28, 2014) ......................................................... 10

*Cunningham v. Heraeus Inc.*
  No. 19-13014 (MAS), 2020 WL 5253565 (D.N.J. Sept. 3, 2020) ............................ 9

*Davis v. Abington Memorial Hosp.*
  765 F.3d 236 (3d Cir. 2014) ........................................................................... 0, 3, 4

*Evancho v. Sanofi-Aventis U.S. Inc.*
  No. 07-2266 (MLC), 2007 WL 4546100 (D.N.J. Dec. 19, 2007) ............................. 8

*Gallagher v. General Motors Co.*
  2020 WL 3481649 (E.D. Mich. Jun. 26, 2020) ....................................................... 8

*Goodson v. Dejoy*
  No. 19-301, 2020 WL 7352658 n.4 (D. Colo. Dec. 15, 2020) .................................. 3

*Gravely v. PetroChoice, LLC*
    No. 19-5409, 2021 WL 765755 (E.D. Pa. Feb. 26, 2021) .......................................... 7

*Kronick v. v. bebe Stores, Inc.*,
    No. 07-4514, 2008 WL 4546368 (D.N.J. Oct. 2, 2008) ................................................ 9

*Lake-Seibert v. Brennan*
    No. 15-925, 2016 WL 410130 n.3 (W.D. Wash. Feb. 2, 2016) .................................. 3

*Logan v. Victory Ent., Inc.*
    No. 18-17129 (RBK), 2021 WL 912814 (D.N.J. Mar. 10, 2021) ............................... 5

*Lundy v. Cath. Health Sys. of L.I. Inc.*
    711 F.3d 106 (2d Cir. 2013) .................................................................................. 3, 4

*Maddy v. General Electric Co.*
    59 F. Supp. 3d 675 (D.N.J. 2014) ............................................................................. 7

*Messenger v. Cabot Oil & Gas Corp.*
    No. 19-308, 2021 WL 2530614 (M.D. Pa. June 21, 2021) ..................................... 11

*Pickett v. Ocean Legal Servs., Inc.*
    No. 11-6980 (AET), 2012 WL 1601003 (D.N.J. May 7, 2012) ................................. 3

*Prise v. Alderwoods Grp., Inc.*
    817 F. Supp. 2d 651 (W.D. Pa. 2011) ..................................................................... 10

*Sheppard v. Mindlance, Inc.*
    No. 24-1172, 2025 WL 2267678 (D.N.J. Aug. 8, 2025) ........................................... 1

*Weirbach v. Cellular Connection, LLC*
    478 F. Supp. 3d 544 (E.D. Pa. 2020) ...................................................................... 11

*Wilcher v. Postmaster General*
    441 Fed. App'x 879 (3d Cir. 2011) ......................................................................... 10

Federal Regulations

39 C.F.R. § 211.2 ............................................................................................................ 2

**ARGUMENT**

The U.S. Postal Service ("Postal Service"), one of the largest employers in the nation, has carefully crafted policies to ensure that its overtime and meal break policies comply with the Fair Labor Standards Act ("FLSA"), and its employees are compensated for all the time they work. Plaintiffs' efforts to avoid dismissal and denial of certification fail for two reasons.

First, the Amended Complaint should be dismissed because Plaintiffs' vague allegations of "typical" work per week is similar to the implausible claim in *Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 242 (3d Cir. 2014). And they do not plausibly allege that they were denied compensation despite following policy by reporting to management that they were performing compensable work during their meal breaks.

Second, Plaintiffs are not entitled to conditional certification. Plaintiffs do not meaningfully challenge any centralized Postal Service overtime or lunch break policy; rather, Plaintiffs allege that tens of thousands of individual Postal Service supervisors, managers, and Postmasters made an untold number of discrete decisions to deny pay to tens of thousands of individual employees at over 30,000 unique facilities across the nation. Because each alleged violation involves unique facts and circumstances, nationwide conditional certification is inappropriate.

I.  **Plaintiffs' Claim is Implausible**

  A. **Postal Service Written Policy Complies with the FLSA.**

Plaintiffs do not challenge any Postal Service policy. Their conclusory references to a "policy" of not paying employees for mealtime work, *see, e.g.*, Am. Compl. ¶¶ 49, 49, 141, is vague and inaccurate. The Postal Service's publicly available

1

FLSA-compliant policies say the opposite—employees *must* be paid for work performed at mealtime, even if the employee's request for overtime was disapproved. The Employee and Labor Relations Manual ("ELM"), the key Postal Service manual that governs labor standards for managers and employees, and which is a Postal regulation available publicly, https://about.usps.com/manuals/elm/elm.htm, contains the pay policies applicable to this case. *See Sheppard v. Mindlance, Inc.*, No. 24-1172, 2025 WL 2267678, at *3 (D.N.J. Aug. 8, 2025) ("Such basic facts are readily ascertainable at the pleading stage even before discovery, and their absence is noticeable."). But rather than cite any actual policy, Plaintiffs vaguely assert that the Postal Service has a "policy" of "automatically deduct[ing] 30 minutes for meal breaks" regardless of whether CCAs actually take those breaks. Opp'n at 25.

That is not so. The Postal Service's pay-during-mealtime policies state the opposite. Those policies are as follows:

- **The Postal Service has an express policy to comply with the FLSA**. *See, e.g.,* ELM § 440, *Fair Labor Standards Act Administration*.

- **Employees must get meal breaks.** *See* ELM § 432.33 ("[N]o employee may be required to work more than 6 continuous hours without a meal or rest period of at least 1/2 hour.").

- **Employees are paid for *all* work performed including during meal breaks, even if a supervisor did not approve the work**. *Id.* § 432.712(c) ("Supervisors must credit employees with all time designated as worktime under the Fair Labor Standards Act . . . include[ing]: . . . Time spent working during meal periods."), § 443.23 ("An employee must be paid for all work performed, regardless of whether the supervisor approved or disapproved the employee's continuing to work."). *See also* Handbook F-401, *Supervisor's Guide to Scheduling*

2

*and Premium Pay* ("F-401") at 3 ("FLSA nonexempt employees must be paid for all time that they work, whether or not the work is authorized.").[1]

- **The only time employees are not compensated for mealtimes is if they "performed no work" during the meal.** *See* Handbook F-21, *Time & Attendance* ("F-21") § 146.23; *see also id.* § 146.24 ("An employee who continues to work contrary to a direct order from his or her supervisor must be paid for all time worked[.]").[2]

- **If an employee believes that she will be unable to complete all of her required duties, including completing delivery of all mail, it is her responsibility to verbally inform her supervisor as soon as possible, request overtime or auxiliary assistance, and complete PS Form 3996.** Handbook M-41, "City Delivery Carriers Duties and Responsibilities" ("M-41") §§ 131.41-131.43, 251; *see also* Handbook M-39, *Management of Delivery Services* ("M-39") §§ 122.3, 122.33.[3]

- **If an employee was not paid for work done at mealtime, the employee must notify the timekeeper of the error and request correction.** F-21 Handbook §§ 146.24; 146.26(c); 711.5 (describing how to "obtain[] an adjustment" including "employee identifies the potential error and notifies the timekeeper").

These FLSA-compliant policies mandate overtime pay for all time worked over eight hours per day or 40 hours per week, including work performed during mealtimes even if the overtime was not authorized.[4] Accordingly, the policies cited

---

[1] The F-401 handbook is available at https://www.nalc.org/workplace-issues/resources/manuals/other/f401.pdf..

[2] The F-21 Handbook is available at https://nalc.org/workplace-issues/resources/manuals/F-21-August-2009-Time-and-Attendence.pdf.. *Cf.* F-21 Handbook § 146.26 ("Supervisors must credit employees with all time designated as work time under the [FLSA]" including "Time spent working during meal periods.").

[3] The M-41 handbook is available at https://www.nalc.org/workplace-issues/resources/body/M-41-City-Delivery-Carriers-Duties-and-Responsibilities-June-2019.pdf. The M-39 handbook is available at https://www.nalc.org/workplace-issues/resources/body/M-39-Management-of-Delivery-Services-June-2019.pdf.

[4] Postal regulations include various manuals and "Headquarters Circulars, Management Instructions, Regional Instructions, Handbooks, Memoranda of Policy, Publications, delegations of authority, and other regulatory issuances and directives of the Postal Service[.]" 39 C.F.R. § 211.2. The Court can take judicial notice of the USPS documents cited in this brief under Fed. R. Evid. § 201(b) because they are

3

above disprove any conclusory assertion that the Postal Service "policy" denies pay for work done at mealtime. *See Pickett v. Ocean Legal Servs., Inc.*, No. 11-6980 (AET), 2012 WL 1601003, at *4 (D.N.J. May 7, 2012) (courts do not "turn a blind eye to the facts as shown in documents also appropriately considered in deciding a motion to dismiss if those facts directly contradict the conclusory allegations in the complaint").

### B. Plaintiffs' Do Not Allege an FLSA Violation in a Given Week

Nor do Plaintiffs allege that their specific hours worked violated the FLSA. In their opposition brief, Plaintiffs acknowledge that their claim is based on the hours they "generally" or "typically" worked. ECF No. 57, Opp'n at 16 ("Plaintiffs here have alleged that they typically worked 40 or more hours each workweek[.]"). They also acknowledge that they must distinguish *Davis*, which affirmed dismissal of the plaintiffs' claim that they "'typically' worked at least forty hours per week, in addition to extra hours 'frequently' worked during meal breaks[.]" 765 F.3d at 242-43. *Davis* rejected the allegations as implausible because "typically" working forty hours or more is not the same as working forty-plus hours in "a single workweek." *Id.* (quoting *Lundy v. Cath. Health Sys. of L.I. Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) ("In order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege forty hours of work in a <u>given</u> workweek <u>as well as</u> some uncompensated time in excess of the

---

publicly available, incorporated into the Code of Federal Regulations, and integral to the complaint. *See Angstadt v. Midd–West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004); *Goodson v. Dejoy*, No. 19-301, 2020 WL 7352658, at *6 n.4 (D. Colo. Dec. 15, 2020) (taking judicial notice of USPS's ELM); *Lake-Seibert v. Brennan*, No. 15-925, 2016 WL 410130, at *3 n.3 (W.D. Wash. Feb. 2, 2016) (taking judicial notice of USPS policies and handbooks).

forty hours." (emphases added by *Davis*)). This difference between a "given" week and a "typical" week is what sets apart a plausible claim from an implausible one. *See id.*[5]

Like in *Davis*, Plaintiffs allege that CCAs "do not have set schedules," are "available to work" seven days a week for four to twelve hours per day, "and <u>generally work</u> at least forty (40) hours in each week that they work." Am. Compl. ¶ 36 (emphasis added).[6] They do not identify any specific week where each Plaintiff worked at least forty hours outside of lunchtime and also worked through lunch (*i.e.,* the lunchtime work put them over 40 hours that week). Moreover, they do not allege that they reported these additional work hours to management, as required by Postal Service policy, and were denied pay. These allegations fail under *Davis*.

The cases on which Plaintiffs rely undermine their argument. *See* Opp'n at 18. In those cases, the plaintiffs alleged unpaid hours that put them over 40 hours. That is, the plaintiffs alleged they "typically" worked forty hours per week and "worked extra hours during <u>such a forty-hour week."</u> *See Ajanel v. JC HVAC LLC*, No. 24-2150 (MEF), 2025 WL 1671318, at *3 (D.N.J. June 12, 2025) (emphasis added).[7] Because

---

[5] *Davis* also works by a different analogy: If Person A "typically" drives 40 miles a week, and A "frequently" drives 1 mile more to get lunch, it nonetheless could be that the weeks A gets lunch are the weeks A drove less than 40 miles. Because of this, *Davis* requires a plaintiff to allege, "I drove 41 miles in one week."

[6] In their opposition, Plaintiffs claim that CCAs "typically work" at least 40 hours. Opp'n at 17. But the Amended Complaint uses the words "generally work[.]" Am. Compl. ¶ 36. *Davis* requires plaintiffs to allege at least "a single specific instance" of uncompensated overtime work, *Davis,* 765 F.3d at 241, and "generally" is not specific. "Generally" means, "in disregard of specific instances and with regard to an overall picture." *See* Merriam-Webster, *generally*, available at https://www.merriam-webster.com/dictionary/generally.

[7] The other cases Plaintiff relies on are similarly distinguishable. *See, e.g.*, *Logan v. Victory Ent., Inc.*, No. 18-17129 (RBK), 2021 WL 912814, at *4 (D.N.J. Mar.

5

Plaintiffs fail to allege that they worked more than 40 hours in a given work week for which they were not paid overtime, their claim is implausible under *Davis*.

Moreover, under *Babcock v. Butler County*, 806 F.3d 153 (3d Cir. 2015), Plaintiffs fail to plausibly allege that they were denied pay for compensable work. As in *Babcock,* Postal Service policy "assumes that generally an [employee] is not working during a mealtime, but provides for appropriate compensation when an [employee] actually does work during the mealtime." *Id*. at 157-58.[8]

In short, Postal policy authorizes Plaintiffs to stop working and take half hour lunch breaks and requires them to receive FLSA-compliant time-and-one-half pay if they work overtime. Plaintiffs fail to allege they performed compensable work during a lunch break in a specific week where they had otherwise worked 40 hours.

## II. Conditional Certification is Improper

Plaintiffs' reply brief makes an important admission that warrants response: this is a practice case, not a policy case. Plaintiffs are not challenging any USPS

---

10, 2021) ("'Plaintiff pleads that she "worked more than forty hours in a given workweek,' and that 'Defendants did not pay her overtime wages.'"); *Buchspies v. Pfizer, Inc.*, No. 18-16083, 2019 WL 5078853, at *3 (D.N.J. Oct. 10, 2019) ("[D]espite working more than forty (40) hours per week, the Plaintiff never received overtime pay."). Curiously, when Plaintiffs quoted to the same sentence in *Logan*, they omitted the word "given." Opp'n at 18.

[8]  Plaintiffs try to distinguish *Babcock* by claiming they have not had the same "sufficient development of the facts" as the employees did before dismissal. Opp'n at 20-21. Yet they have more facts. They have access to Postal Service express policy requiring overtime payments and the many other Postal Service policies, manuals, and handbooks that describe in detail what employees can and cannot do during lunch, and that <u>require the Postal Service</u> to pay employees for all work performed at mealtime whether the supervisor approved the overtime or not. Plaintiffs know their own experiences during the mealtimes, including when and where they could eat lunch. There is no informational asymmetry here.

policy; they challenge only the way specific, unidentified supervisors allegedly misapplied those policies to specific employees. Plaintiffs' combined reply and opposition brief describes their claim as follows: "Plaintiffs typically worked 40 or more hours each workweek, [and] USPS failed to compensate them for working through lunch breaks in such workweeks[.]" Opp'n Br. at 16. They then rely on the verbatim declarations submitted by putative collective class members and claim there are only "minor differences in location and routes" in those declarations. *Id.* at 23, 26. None of these arguments satisfy Plaintiffs' burden for conditional certification.

First, conditional certification fails because Plaintiffs do not meaningfully challenge any Postal Service policy, and because the policies cited above disprove any conclusory assertion that the Postal Service denies pay for work done at mealtime. *See Armstrong v. Weichert Realtors*, No. 05-3120 (JAG), 2006 WL 1455781, at *2 (D.N.J. May 19, 2006) ("[Plaintiff] provides no factual foundation for his statement that Weichert Human Resources policies mandated that loan officers not be paid overtime. This appears to be a conclusory allegation; in the absence of any supporting factual assertions, it does not allow this Court to infer the existence of a company policy that would be expected to result in a class of similarly situated loan officers.").

In fact, when Plaintiffs cite to decisions that "routinely" grant conditional certification in mealtime cases, Opp'n at 23 (citing Pl.'s Motion for Condition Cert. at Section II.C), those cases all had what Plaintiffs do not: a challenge to a generally applicable, company-wide policy. For example, in *Maddy v. General Electric Co.*, 59 F. Supp. 3d 675, 682 (D.N.J. 2014), the Court conditionally certified a class

7

challenging "two nationwide policies or procedures instituted by Defendants that affected named Plaintiffs and all other service technicians[.]" In *Gravely v. PetroChoice, LLC*, No. 19-5409, 2021 WL 765755 (E.D. Pa. Feb. 26, 2021), the court recognizes that conditional certification in "FLSA meal-break cases" generally require a common policy, and the court granted certification because the defendant had "a common policy of deducting meal-break time that is reflected in Defendant's Employee Handbook[.]" *Id.* at *5. *See also Anderson v. Wells Fargo Fin., Inc.*, 2012 WL 12871958, *6 (S.D. Iowa, Feb. 6, 2012) ("The existence of a written policy dictating overtime pay is one factor weighing against conditional certification."). Accordingly, Plaintiff's cannot rely on a written policy to show they are "similarly situated."

Second, Plaintiffs claim that the Postal Service has a "systemic practice" of violating its own FLSA policies also fails. They allege, "on information and belief," that there is a pressure campaign by Postal Service management to save money. Am. Compl. ¶¶ 37-48. Such a broad, conclusory assertion is insufficient. Although a companywide "unwritten policy" can be sufficient to survive conditional certification, *Maddy* 59 F. Supp. 3d at 687, any such claim must have a modicum of proof. *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. 09-85J, 2011 WL 6372873, at *4 (W.D. Pa. Dec. 20, 2011). (requiring plaintiff seeking conditional certification to provide a sufficient "quality of evidence" that employer had an unstated "policy to violate policy").

Here, Plaintiffs offer no evidence that Postal Service management and tens of thousands of individual supervisors in 33,000 different facilities conspired in a pressure campaign to deprive them of overtime pay: no written document, email,

8

declaration supported by personal knowledge or even hearsay. They offer verbatim declarations that provide no such evidence, alleging only that the declarants felt busy and worked through lunch. Specifically, the nineteen declarations attached to the Motion for Conditional Certification say the same thing in almost every paragraph, including Paragraph 9 that reads, "due to the pressures and expectations of my job I worked straight through my shifts and simply ate on the go." *See, e.g.*, Paragraph 9 in ECF Nos. 53-1 to 53-19. Plaintiffs fail to support their threadbare allegation made on "information and belief" that thousands of supervisors nationwide engage in a common pressure campaign to deny mealtime pay.[9]

The declarants do not allege that they were told by any supervisor to work through lunch without pay; that they told any supervisor they did not receive overtime pay for the mealtime work; that they logged their mealtime work somewhere, say, by completing the PS Form 3996; or that they notified their

---

[9] *See Gallagher v. General Motors Co.*, 2020 WL 3481649, at *5 (E.D. Mich. Jun. 26, 2020) (finding insufficient "generalized assertions . . . based on information and belief . . . [that] contract workers employed [by defendants] were subject to the same compensation and overtime plan, practices, and policies" because they "provide no detail as to how they came about the 'information' that leads them to a 'belief,'" and "[n]o statements from Defendant's managers are quoted and the managers are not identified") (citations omitted); *Asirifi v. W. Hudson Sub-Acute Care Ctr., LLC*, No. 11-04039, 2014 WL 294886, at *3 (D.N.J. Jan. 24, 2014) (denying conditional certification where the plaintiffs asserted that defendant regularly deducted thirty minute meal break regardless of whether such a break was taken, and stating that "the alleged application of a uniform policy does not, without more, show that potential class members are similarly situated"); *Evancho v. Sanofi-Aventis U.S. Inc.*, No. 07-2266 (MLC), 2007 WL 4546100, at *2 (D.N.J. Dec. 19, 2007) ("Certification at the notice stage, however, is not automatic; substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination are required.").

9

supervisors of any purported unpaid mealtime work or invoked the administrative process to correct pay errors.[10] Even taking their boilerplate declarations as true, they do not establish that an unstated common practice against paying for mealtime work existed. *See Cunningham v. Heraeus Inc.*, No. 19-13014 (MAS), 2020 WL 5253565, at *5 (D.N.J. Sept. 3, 2020) (finding FLSA claim failed when plaintiff "was permitted to work overtime whenever he wanted without preapproval" but "fail[ed] to accurately report such time"); *see also Camesi*, 2011 WL 6372873, at *5 (rejecting certification where "Plaintiffs' counsel has failed to identify opt-in member(s) who were dissuaded from cancelling, or instructed not to cancel, deductions for meal breaks. Nor are there any allegations that employees who cancelled meal breaks suffered retaliation."); *Kronick v. bebe Stores, Inc.*, No. 07-4514, 2008 WL 4546368, at *3 (D.N.J. Oct. 2, 2008) (denying conditional certification because "Plaintiffs do not make even a modest showing of evidence, beyond pure speculation, that [d]efendant's alleged policies were applicable to other employees. Plaintiffs assert generalized assumptions and effectively assume a similar situation for themselves and the prospective class").

Plaintiffs' argument that they lack discovery is meritless. They claim, essentially, that each class member faced illegal pressure from each of their supervisors. Those assertions—if true—would be supportable by the declarants

---

[10]   *Cf.* Handbook M-41, "City Delivery Carriers Duties and Responsibilities" ("M-41") §§ 131.41, 251 (requiring any employee who believes she will work through mealtime to verbally inform her supervisor and complete the overtime form called a PS Form 3996); F-21 Handbook §§ 146.24; 146.26(c); 711.5 (describing "sequence of events in obtaining an adjustment" including "employee identifies the potential error and notifies the timekeeper").

10

describing those alleged experiences, interactions, and consequences. None of the nineteen declarations does so. *See Camesi*, 2011 WL 6372873, at *5 ("[I]f any evidence of Plaintiffs' potential 'policy to violate a policy' theory exists, at least some of that evidence reasonably would be expected to appear within the knowledge and possession of Plaintiffs themselves."). As such, there is no evidence that an unwritten policy existed, or that it applied to the putative collective class. And, therefore, there is no single question the Court can answer that will resolve any common issue. *See Prise v. Alderwoods Grp., Inc.*, 817 F. Supp. 2d 651, 680 (W.D. Pa. 2011) ("Plaintiffs also failed to articulate cogently a single corporate-wide decision, policy or plan about nonpayment for meal breaks or that such a plan similarly affected plaintiffs.").

Moreover, Plaintiffs allege similarities—same employer, title, general duties and responsibilities, etc.— too generic to pass muster. "Being similarly situated does not mean simply sharing a common status." *Chandler v. Heartland Emp. Servs., LLC* 2014 WL 1681989, *3 (E.D. Pa., Apr. 28, 2014). It "takes into account factors such as the employees' job responsibilities [and] the supervisors and decision-makers and the nature of the misconduct engaged in." *Wilcher v. Postmaster General*, 441 Fed. App'x 879, 882 (3d Cir. 2011). The employees should be "employed in the same department, division, and location." *Weirbach v. Cellular Connection, LLC*, 478 F. Supp. 3d 544, 548 (E.D. Pa. 2020). Here, Plaintiffs, all CCAs, work at tens of thousands of different facilities nationwide under different supervisors, managers, and Vice Presidents.

Plaintiffs fail to show how an alleged unwritten practice at facilities in New Jersey, Illinois, and Washington renders them similarly situated to CCAs (and

11

apparently PTFs) across the Postal Service's 33,000 facilities nationwide.[11] There is no written evidence of the purported pressure campaign, or that all affected employees' supervisors (or their respective chains of command, including District Managers, Area Managers, and Area Vice Presidents) were aware of and motivated by it. *See Messenger v. Cabot Oil & Gas Corp.*, No. 19-308, 2021 WL 2530614, at *3 (M.D. Pa. June 21, 2021) ("Simply because the focus at this juncture is whether a plaintiff has pointed to some evidence that employees are similarly situated does not mean that Messenger is entitled to rely on bare assertions alone with respect the entities he alleges engaged in the common policy or plan that violated the law.").

Lastly, conditional certification would be unworkable. Each alleged violation will require individualized discovery into each Plaintiff's circumstances, the facility where they work(ed), and their management officials. And for each state where an employee opts in, Plaintiffs will create subclasses under state FLSA statutes and a state law Rule 23 class. *See* Am. Compl. ¶¶ 121-85 (Illinois, New Jersey, and Washington Classes). This will involve a patchwork of different state laws and state court actions. In contrast, pursuing discrete, known claims in the relevant states or districts will ensure the appropriate forum's law is applied, avoid dozens of individual sub-classes, and result in faster relief for prevailing plaintiffs.

---

[11] Plaintiffs defined the collective group differently in their pleading and motion. *See* Am. Compl. ¶ 6 (collective of CCAs). The Court should not consider a collective beyond that sought in the complaint, CCAs. PTFs are part-time positions subject to different scheduling rules and issues with for overtime and the FLSA.

12

## CONCLUSION

For the reasons set forth above, the Court should dismiss the Amended Complaint or, in the alternative, deny conditional certification. Alternatively, the parties should be permitted to conduct limited pre-certification discovery with respect to the claims of the three named Plaintiffs.

    TODD BLANCHE
    U.S. Deputy Attorney General

    JORDAN FOX
    Chief of Staff &
    Associate Deputy Attorney General
    Special Attorney

By:   *s/ Alex Silagi*
    ALEX D. SILAGI
    Assistant United States Attorney
    Deputy Chief, Civil Division
    *Attorneys for Defendants*